Alabama Mineral Land Company v. Commissioner.
Alabama Mineral Land Co. v. Commissioner
Docket No. 50706.
United States Tax Court
T.C. Memo 1956-26; 1956 Tax Ct. Memo LEXIS 267; 15 T.C.M. (CCH) 124; T.C.M. (RIA) 56026; January 31, 1956
*267 Petitioner corporation was organized in 1883 for the purpose of selling some 361,000 acres of land, together with timber and mineral rights appurtenant thereto, which it acquired from the bondholders of a defunct railroad. From the date of its incorporation to and throughout the years in issue, it continually sold its land, timber, and mineral properties. On its income tax returns for 1943 and 1944, petitioner reported the gain from the sale of such properties as capital gain. Respondent determined that such gain was ordinary income. On its returns for 1943 and 1944, petitioner claimed a depletion deduction on timber sold during such years based on the unrecovered March 1, 1913 value of such timber, which depletion deduction the respondent disallowed in large part. On its return for 1943, petitioner claimed a loss of $28,475.66 on a land sale, which loss is computed on the basis of the difference in the March 1, 1913 fair market value of such land and the selling price. Respondent disallowed such claimed loss. Held, petitioner was regularly engaged in the business of selling land, timber, and mineral properties from the date of its incorporation to and throughout the years in issue, *268 and the gain derived from the sale of such properties during the years 1943 and 1944 was ordinary income. Held, further, the unrecovered March 1, 1913 value of timber which petitioner sold during the years in issue determined. Held, further, petitioner's basis for claiming a loss on the sale of land owned by it on March 1, 1913, is the cost of such land and since no evidence of such cost was introduced, the respondent's disallowance of the claimed loss is sustained. John R. Stivers, Esq., 81 Monroe Avenue, Memphis, Tenn., for the petitioner. J. Frost Walker, Esq., and Frederick T. Carney, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion This proceeding involves the following deficiencies in taxes determined by the respondent under the provisions of the 1939 Code: *269 Year
Tax
Deficiency
1943
Income
$17,433.29
Declared-Value Excess Profits
37.64
1944
Income
3,845.75
Declared-Value Excess Profits
1,155.10
The issues to be decided are: (1) whether gain which the petitioner received from the sale of land, timber, and mineral properties during the years in issue was taxable as ordinary income or as capital gains; (2) whether the respondent erred in his determination of the amount of petitioner's unrecovered March 1, 1913 basis of timber sold during the years in issue; and (3) whether petitioner is entitled to a deductible loss in the amount of $28,475.66 in 1943 on a land sale which it made in that year. Concessions have been made with respect to another issue which will be taken into account in a Rule 50 computation. Findings of Fact Petitioner is an Alabama corporation and filed its income and declared-value excess profits tax returns for the years in issue with the collector of internal revenue for the district of Alabama. Issue 1. Petitioner was incorporated in 1883 and acquired approximately 361,000 acres of land in the State of Alabama, from the bondholders of the defunct Selma, Rome and Dalton Railroad *270 Company. Petitioner's certificate of incorporation recited that its incorporators: "* * * do hereby constitute ourselves a body politic and corporate, under and in accordance with the provisions of the Constitution and Laws of Alabama * * * for the purpose of taking and owning the said lands, claims, property, tenements, hereditaments, rights and interests * * * and of managing, improving, developing and selling the same or any part or parts thereof, as well as of acquiring for use, improvement, developing and sale such other real estate situated within the State of Alabama or such personal property as can be acquired or held by such corporation consistently with the Constitution and Laws of said State of Alabama * * *." From the time of its incorporation and commencement of business activity to March 1, 1913, petitioner sold approximately 163,000 acres of its land. It issued 1,239 land deeds and 523 timber deeds during such period. From March 1, 1913 until December 31, 1944, petitioner made aproximately 496 land sales and 338 timber sales. Such land sales embraced approximately 117,700 acres. In 1942, it made 25 land sales; in 1943, it made one land sale; and in 1944, it made *271 seven land sales; such 33 sales being in the total amount of 18,503.83 acres. In addition to land and timber sales, the petitioner made leases of coal and mineral rights and received royalties therefrom. The petitioner was well known among lumber, sawmill, and land title men throughout the State of Alabama. Because of that fact, it did not find it necessary to conduct aggressive sales campaigns or to advertise extensively that its land, timber, and mineral properties were for sale. From time to time, the company issued maps showing the location of its land holdings in the State of Alabama, which carried the following legend in large bold letters in the lower right hand corner: "THESE LANDS ARE NOW OFFERED FOR SALE They Embrace VALUABLE AGRICULTURAL LANDS, LARGE BODIES OF YELLOW PINE, AND HARD WOOD, FINE COAL LANDS, RICH IRON ORE LANDS, ETC. "All Accessible to Railroads. "For Terms of Sale, and other information concerning the Lands, address ALABAMA MINERAL LAND COMPANY, ANNISTON, ALA." Petitioner's stationery for many years was imprinted with a letterhead which read as follows: "ALABAMA MINERAL LAND COMPANY Owners of SELMA, ROME AND DALTON RAILROAD LANDS 350,000 *272 acres of mineral, timber and agricultural lands for sale and lease" Petitioner sold all of its merchantable timber by the end of 1950 and by February 1955 sold all of its land except for approximately 18,000 acres located in Shelby County, Alabama. On its income tax returns for 1943 and 1944, petitioner reported the net gain on land, timber, coal, and mineral sales and royalties as long-term capital gains. The respondent disallowed such treatment and determined that gain from the sales of its properties constituted ordinary income. Petitioner was engaged in the business of selling land, timber, and mineral rights and such properties sold by it during the years in issue were held as its stock in trade for sale to customers in the ordinary course of its trade or business. Issue 2. Petitioner's land holdings were scattered over an area of some 565 square miles in a checkerboard pattern rather than being in one or several large tracts. It maintained plat books in which the exact location of its various holdings were recorded, together with such information as the amount of timber, the type of land, the water available on such land, and the minerals located thereon. Such plat *273 books also contained a record of land sales, timber sales, and ore leases. Petitioner employed individuals known as "cruisers," who estimated the timber growth on its land holdings at various times before and after March 1, 1913. The record discloses no cruises made immediately prior to or subsequent to that date. In 1918 or 1919, petitioner's General Agent, W. A. Davis, prepared a list arranged by section, township, and range of petitioner's acreage in each of some 646 tracts and a valuation in dollars per acre of the land and timber on such tracts. Such valuation list did not show any value for timber on certain tracts where timber existed. Petitioner, for many years, used the data in such inventory in ascertaining its March 1, 1913 basis for purposes of computing the amount of gain on sales of land and timber. In a letter to the collector of internal revenue, dated April 15, 1932, petitioner's president wrote: "* * * Our 1913 valuations were made by the persons (and the only persons) who were acquainted with the entire holdings of this company and a copy of these valuations has been on file in your department for many years. * * *." As of December 31, 1941, petitioner had recovered *274 $1,188,777.85 of its thus determined March 1, 1913 timber basis by depletion allowances. In 1913, logging operations in Alabama were carried on with the use of mules, horses, and, occasionally, oxen. Not until 1927 were trucks used extensively in logging operations. Petitioner, itself, never carried on logging and lumber operations but always leased or sold its timber to others. Prior to March 1, 1913, it had issued 523 timber deeds and large areas of its virgin timber holdings had been logged at that time. On its returns for 1943 and 1944, the petitioner claimed a depletion allowance of $57,863.25, based on its claimed unrecovered March 1, 1913 value of its timber. In determining the deficiencies herein, the respondent disallowed such claimed depletion in large part, determining that petitioner's unrecovered March 1, 1913 basis of timber which it owned on December 31, 1941, [1] was $33,256.37. *275 On December 31, 1941, the remaining unrecovered March 1, 1913 basis of petitioner's timber for depletion purposes was $118,188. Issue 3. On May 21, 1943, petitioner entered into a timber cutting contract with A. R. Belcher whereby Belcher was authorized to cut timber from 14,834.31 acres of petitioner's land. The consideration for such contract was $108,786.51. On August 31, 1943, petitioner sold most of the land covered by the above-mentioned cutting contract to the W. E. Belcher Lumber Company, reserving the timber rights covered by its contract with A. R. Belcher. Sometime before October 16, 1944, A. R. Belcher assigned his timber cutting rights in the above-mentioned May 21, 1943 contract to the W. E. Belcher Lumber Company; and, on October 16, 1944, petitioner conveyed to the lumber company such timber cutting rights as it previously had conveyed to A. R. Belcher. On its return for 1943, the petitioner claimed a loss of $28,475.66 on its sale of land to the W. E. Belcher Lumber Company. In computing the amount of such loss, petitioner deducted the sales price of $42,713.49 from its claimed March 1, 1913 fair market value of $71,189.15. The respondent disallowed such claimed *276 loss. Opinion Issue 1. RICE, Judge: The respondent determined that petitioner was engaged in the business of selling land, timber, and mineral rights and that gains from the sale of such properties constituted ordinary income and not capital gains as petitioner reported on its returns. We found as a fact that petitioner was engaged in the business of selling land, timber, and mineral rights and that such properties sold by it during the years in issue were its stock in trade. It, therefore, follows that the gain derived from such sales was taxable as ordinary income. Petitioner argues that the gain from the sale of such properties should be taxed as capital gains because it was organized to liquidate the large land holdings of the bondholders of the defunct Selma, Rome and Dalton Railroad Company, and that it consistently pursued that purpose from the date of its incorporation to and throughout the years here in issue. Petitioner's argument that its sale of land, timber, and mineral properties over three-quarters of a century was a liquidation presupposes the existence of a fact which is at complete variance with the record herein; namely, that petitioner originally acquired *277 its properties for purposes of investment and not for sale. That, of course, was not the case. The bondholders of the railroad may have used petitioner as the vehicle for "liquidating" their large land holdings, but petitioner, itself, was a separate taxable entity. It acquired the land from the bondholders for the purpose of selling it, together with all timber and mineral rights appurtenant thereto; and from 1883 to the date of the hearing, it never deviated from that purpose. It was, therefore, from the date of its incorporation, regularly engaged in the business of selling its properties, which was the purpose for which it was formed. All of its properties were its stock in trade, held for sale in the normal course of its business, and all gains derived therefrom are taxable to it as ordinary income. Issue 2. As set forth in our findings of fact, we have fixed the unrecovered March 1, 1913 value of timber which petitioner owned on December 31, 1941. We have fixed that value clearly mindful that we were asked to value an asset which, at the date of the hearing, had entirely disappeared; value it as of a time almost one-half century ago; and, value it from a morass of documentary *278 evidence about which there was wide and irreconcilable disagreement between acknowledged experts. At the hearing, petitioner's plat books were introduced in evidence. As noted in our findings, those books contained estimates, made by timber cruisers at various times since 1883, of the amount, kind, and quality of timber on various tracts of land which petitioner owned. The valuation of petitioner's land and timber made by W. A. Davis in 1918 or 1919 was also introduced. In addition to those and other items of documentary evidence, the petitioner and the respondent both called expert witnesses who testified at great length as to what the March 1, 1913 value of its timber holdings was, and also what the remaining unrecovered March 1, 1913 value of its timber was on December 31, 1941. The petitioner's expert testified that such remaining unrecovered basis on December 31, 1941, was $1,831,148.62; the respondent's expert testified that it was $32,857.47. We feel that no purpose would be served by a detailed analysis here of the many facts and considerations which we have weighed in reaching our finding as to the unrecovered March 1, 1913 value of timber which petitioner owned on December 31, 1941. Our *279 task was obviously made particularly difficult because of the wide disparity in the experts' estimates of such unrecovered basis. We have given careful consideration to the testimony of both expert witnesses, to their explanations of the documentary evidence introduced at the hearing, and to their conclusions drawn therefrom. Neither expert actually cruised petitioner's timber in 1913, but both had cruised certain tracts in subsequent years. On the record before us, we found that the unrecovered March 1, 1913 basis of timber which petitioner owned on December 31, 1941, was $118,188. It is entitled to recover that basis, by way of an allowance for depletion, from sales of such timber made subsequent to December 31, 1941, including the sales made during the years in issue. Issue 3. As recited in our findings of fact, the petitioner claimed a loss on a land sale in 1943 on the grounds that the March 1, 1913 value of such land exceeded the sales price. The respondent disallowed such claimed loss on the grounds that the basis for determining the loss on the sale of property held on March 1, 1913 is cost, and that no evidence as to the cost of the land had been offered. The petitioner *280 devoted little attention to this issue on brief. The provisions of the 1939 Code with respect to the basis for determining the amount of gain or loss realized on the sale of property owned on March 1, 1913, [2] are clear and unambiguous. Section 113 provides that the basis for determining gain or loss on the sale of any property shall be cost except as specifically provided in various subsections of such section. Section 113(a)(14) provides, in effect, that for purposes of determining gain on the sale of property held on March 1, 1913, the basis shall be the adjusted basis or the fair market value on that date, whichever is greater. No mention is made of any other basis than cost for purposes of determining loss on such property. At the hearing, the petitioner introduced no evidence as to the cost of the land, and the respondent's determination is accordingly sustained. *281 Decision will be entered under Rule 50. Footnotes
1. Respondent determined an overassessment in petitioner's income tax for 1942, due to his allowance of depletion of coal in excess of that claimed by petitioner on its return. Petitioner also sold timber in 1942, claiming depletion thereon of $3,225. Respondent allowed depletion of only $200. Because his adjustment of petitioner's allowable timber depletion began with the year 1942, the parties have presented their evidence of the March 1, 1913 value of timber to show the unrecovered portion of such value on December 31, 1941. We have, therefore, directed our attention to finding the unrecovered March 1, 1913 value as of that date.↩
2. SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS. (a) Basis (Unadjusted) of Property. - The basis of property shall be the cost of such property; except that - * * *
(14) Property acquired before March 1, 1913. - In the case of property acquired before March 1, 1913, if the basis otherwise determined under this subsection, adjusted (for the period prior to March 1, 1913) as provided in subsection (b), is less than the fair market value of the property as of March 1, 1913, then the basis for determining gain shall be such fair market value. In determining the fair market value of stock in a corporation as of March 1, 1913, due regard shall be given to the fair market value of the assets of the corporation as of that date.↩